IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| JAMES CUDD, SR.,<br><br>Plaintiff,<br><br>vs.<br><br>TRISTAN KOHUT and PAUL REES,<br><br>Defendants. | CV 19-00015-H-BMM-JTJ<br><br>**ORDER** |

Plaintiff James Cudd, Sr. ("Cudd") filed a Complaint against two physicians charged with caring for Cudd's various health conditions at Montana State Prison ("MSP"). Doc. 2. Defendants Tristan Kohut and Paul Rees (collectively "Defendants") filed a Motion for Summary Judgment under Fed. R. Civ. P. 56. Doc. 42. United States Magistrate Judge John Johnston recommended that the Court grant Defendant's Motion for Summary Judgment. Doc. 56 at 29. Cudd objected to Judge Johnston's recommendation. Doc. 57. Defendants filed a response. Doc. 58.

**JUDGE JOHNSTON'S FINDINGS AND RECOMMENDATIONS**

Cudd claims that Defendants violated the Eighth Amendment. Doc. 15 at 1. Cudd alleges that Defendants interfered with or delayed necessary medical treatment in the following ways: (1) improperly prescribing and failing to reduce prednisone;

1

(2) failing to follow the recommendations of Cudd's eye doctor ("Dr. Nedrud") and failing to schedule timely eye surgery; and (3) failing to prescribe adequate pain medication. *Id*. at 5.

Judge Johnston determined that Cudd's prescriptions and treatments have been monitored and adjusted as needed in consultation with medical providers outside of MSP. Doc. 56 at 18–19. Judge Johnston also determined that there was no indication that Defendants prevented Cudd from receiving Dr. Nedrud's treatment. *Id*. at 25–26. Defendants followed the guidance of Dr. Nedrud. *Id*. Lastly, Judge Johnston determined that Cudd failed to demonstrate that the alternative pain management treatments provided were unacceptable under the circumstances. *Id*. at 28.

Judge Johnston concluded that Cudd provided no evidence from which one can infer that Defendants subjected him to cruel and usual punishment. *Id*. at 28–29. Judge Johnston also concluded that Cudd presented no genuine issue of material fact as to whether Defendants improperly cared for his serious medical needs. *Id*. at 18. Based on his findings, Judge Johnston recommended the Court grant Defendant's Motion for Summary Judgment. *Id*. at 29.

## LEGAL STANDARD

The Court conducts de novo review of the portions of a magistrate judge's findings and recommendations to which a party properly objects. 28 U.S.C.

§ 636(b)(1). A party makes a proper objection by "identifying the parts of the magistrate's disposition that the party finds objectionable and presenting legal argument and supporting authority, such that the Court is able to identify the issues and the reasons supporting a contrary result." *Montana Shooting Sports Ass'n v. Holder*, 2010 WL 4102940, at *2 (D. Mont. Oct. 18, 2010). The Court will review for clear error the portions of a magistrate judge's findings and recommendations to which a party's objections constitute only perfunctory responses argued in an attempt to rehash the same arguments set forth in the original response. *Rosling v. Kirkegard*, 2014 WL 693315, at *3 (D. Mont. Feb. 21, 2014). Clear error exists if the Court is left with a "definite and firm conviction that a mistake has been committed." *United States v. Syraz*, 235 F.3d 422, 427 (9th Cir. 2000).

## OBJECTIONS

Cudd filed objections to Judge Johnston's Findings and Recommendations. Doc. 57. First, Cudd alleges that Defendants improperly prescribed prednisone, resulting in mismanagement of his health. *Id*. Cudd claims the improperly prescribed prednisone caused his diabetes, renal shutdown, low bone density, and other medical issues. *Id*. Cudd also asserts that Defendants were negligent in treatments for these conditions. *Id*. Cudd's second objection asserts that Defendants refused Cudd eye surgery despite his stable rheumatoid arthritis ("RA") and blood sugar. *Id*. Cudd's

3

third objection alleges that Defendants refused to prescribe him pain medicine, except for Tylenol. *Id.*

Cudd's objections repeat the same arguments already decided by Judge Johnston. Cudd fails to present additional legal issues or arguments that would support a contrary result have been presented. The Court will review Judge Johnston's Findings and Recommendations for clear error. Doc. 56; *see Rosling*, 2014 WL 693315 at *3.

## ANALYSIS

Judge Johnston correctly determined that the record contains no evidence from which the Court can infer that Defendants acted deliberately indifferent to Cudd's serious medical needs in violation of the Eighth Amendment. Doc. 56 at 28–29. The Court finds no clear error in Judge Johnston's Findings and Recommendations. Summary judgment is appropriate where the moving party demonstrates the absence of genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute to a material fact is considered genuine if sufficient evidence exists for which a reasonable factfinder may return a verdict for the nonmoving party. *Id.* Disputes over irrelevant or unnecessary facts will not preclude summary judgment. *Id.*

Cudd claims that Defendants deprived him of an Eighth Amendment right to be free from cruel and unusual punishment, enforced through 42 U.S.C. § 1983. *See generally*, Doc. 15. The government has an "obligation to provide medical care for those whom it is punishing by incarceration," and "deliberate indifference to serious medical needs of prisoners constitute the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976).

The test for deliberate indifference involves the following two elements: (1) plaintiff must show a serious medical need by demonstrating that failure to treat his condition could result in further significant injury or unnecessary and wanton infliction of pain; and (2) plaintiff must show the defendants' response to the need was deliberately indifferent. *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012). Judge Johnston presumed that Cudd has serious medical needs, and the first element is satisfied. Doc. 56 at 13.

### 1. IMPROPERLY PRESCRIBING AND FAILING TO REDUCE PREDNISONE

Judge Johnston correctly determined that a reasonable jury could not find Defendants were deliberately indifferent to Cudd's serious medical needs. Doc. 56 at 21; *see Estelle*, 429 U.S. at 104–05. Cudd fails to show Defendants knew of and willfully disregarded an excessive risk. *See Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

Cudd entered MSP with an active hepatitis C ("HCV") infection, and Cudd also has severe RA. Doc. 44-1 at 4. Cudd treated his RA with a variety of medications. *See* Docs. 53-5 at 4, 14; 44-1 at 5. The HCV infection and Cudd's intolerance to some RA medications complicated Cudd's RA treatment. *Id.* Other biologic therapies are available to treat RA, but these therapies are not available to those with an HCV infection. Doc. 44-2 at 6.

Defendants prescribed prednisone to manage Cudd's RA in May of 2014 because, in their medical opinions, prednisone was the only suitable treatment due to Cudd's other illnesses and allergies/intolerance for other RA treatments. Doc. 44-1 at 4–5. Dr. Rees discussed repeatedly the potential side effects of long-term prednisone use with Cudd. Docs. 44-1 at 9; 44-2 at 9. Cudd knew of the potential side effects because he sought out the information himself as well through the website of Johns Hopkins Vasculitis Center. Docs. 15 at 3; 53-5 at 8–13.

When MSP approved new procedures for inmate HCV treatment, Cudd was recommended for treatment. Doc. 56 at 15. Infectious disease specialist Dr. Joshua Christensen treated Cudd for HCV and alleviated the illness in November of 2017. Doc. 53-5 at 2. Cudd became eligible for other RA treatments once the HCV cleared, so Defendants consulted with outside specialists to develop a new treatment plan. Cf., Doc. 53-5 at 3; with Docs 53-3 at 2; 44-2 at 6–7. A rheumatology specialist, Dr. Rebecca Belsom, and an endocrinology specialist, Dr. John McKenna, began seeing

Cudd. The providers prescribed a different RA medication, Orencia, and advised Cudd to taper his prednisone. Docs. 53-5 at 4-5; 44-2 at 7. Dr. Nedrud also advised Cudd to taper his prednisone. Doc. 53-5 at 22. Cudd failed to follow the prescribed tapering regiment for up to six months despite the providers' joint treatment plan. Doc. 44-2 at 7.

Cudd presents no evidence to show any of the outside providers opined that Defendants' medical decisions were inappropriate. Defendants' affidavits and Cudd's medical records indicate that the outside providers did not disagree with Defendants' decision to prescribe prednisone or with the dosage amounts. Doc. 56 at 15.

### 2. FAILING TO FOLLOW RECOMMENDATIONS FROM DR. NEDRUD

Judge Johnston correctly determined that the record contained no indication that Defendants denied, delayed, or interfered with Dr. Nedrud's medical treatment. Doc. 56 at 25–26. The record shows that Defendants followed Dr. Nedrud's guidance. Doc. 56 at 25–26. To succeed on this claim Cudd must show that the denial of surgery was "medically unacceptable under the circumstances" and made in "conscious disregard of an excessive risk to [Cudd]'s health." *Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015). "Mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference." *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

Cudd fails to show that Defendants did anything contrary to Dr. Nedrud's recommendations. Eye treatments and procedures were performed upon request of Defendants when no medical obstacles presented themselves. Docs. 56 at 21–22; 44-1 at 11–12; 44-2 at 15–16. Eye surgeries were delayed for health reasons, at times, but the delays were in coordination with Dr. Nedrud's opinion. Docs. 56 at 22–25; 44-2 at 18–19.

Nothing in the evidence shows that Cudd's RA and blood sugar is currently stable. Cudd fails to provide evidence that he would be a candidate for the eye surgery if he did maintain stable RA and blood sugar. Dr. Nedrud never made a referral to perform surgery on Cudd's right eye; thus, Defendants never acted to delay, deny, or interfere with Dr. Nedrud's medical treatment for Cudd's eyes. *See Shapley*, 766 F.2d at 407.

### 3. FAILING TO PRESCRIBE ADEQUATE PAIN MEDICATION

Judge Johnston correctly determined that Defendants adequately treated Cudd's pain. Doc. 56 at 28. Defendants' decision to offer alternative treatment for pain was not medically unacceptable under the circumstances or chosen in disregard of excessive risk to Cudd's health. Doc. 56 at 28; *See Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). Differences in judgment as to medical diagnoses and treatment between medical providers are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Further,

differences between inmates and prison medical authorities regarding treatment does not give rise to a § 1983 claim. *Franklin v. Oregon*, 662 F. 2d 1337, 1344 (9th Cir. 1981).

Cudd previously received Tramadol for pain. Doc. 44-1 at 10. After Cudd complained of decreased relief, Dr. Rees diagnosed Cudd with opiate intolerance. Doc. 44-2 at 12. MSP also began a new program to wean all inmates off opiates. Doc. 44-2 at 12–13. Opiates remain available, however, to inmates admitted to the infirmary. *Id*. Cudd repeatedly refused to admit himself to the infirmary to receive opiate pain management. *Id*. at 12. Cudd acknowledges that opiates remain available, but Cudd believes he should not have to sit in the infirmary to receive care. Docs. 52 at 2, 4; 53-2 at 3. Additionally, Cudd treated his chronic pain with steroids, non-steroidal anti-inflammatory drugs, biologic agents, and medical attempts to control his diabetes. Doc. 53-2 at 14. Cudd fails to present any new evidence or arguments to establish the medications offered were medically unacceptable or done in deliberate indifference of his pain management needs.

## CONCLUSION

Judge Johnston's Findings and Recommendations show no clear error. *See Rosling*, 2014 WL 693315, at *3. Accordingly, the Court adopts Judge Johnston's Findings and Recommendations.

## ORDER

**IT IS ORDERED** that Judge Johnston Findings and Recommendations (Doc. 56) is **ADOPTED IN FULL**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Doc. 42) is **GRANTED**.

The Clerk of Court shall have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.

DATED this 16th day of August, 2021.

_____
Brian Morris, Chief District Judge
United States District Court